**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| QUIANA MATTHEWS, KEEONA PERSON and MICHELLE GONGORA, on behalf of themselves and other similarly situated female laborers, | Case No. |
| Plaintiffs, | Judge |
| v. | Magistrate Judge |
| PERSONNEL STAFFING GROUP, LLC d/b/a MVP, | |
| Defendant. | |

**CLASS ACTION COMPLAINT**

Qiana Matthews, Keeona Person and Michelle Gongora ("Plaintiffs"), on behalf of themselves and all other similarly situated female laborers of Personnel Staffing Group, LLC d/b/a MVP ("MVP") who sought work at one of MVP's dispatch offices in Illinois to a client company of MVP, for their Complaint against MVP, state as follows:

**I.     INTRODUCTION**

1.     This lawsuit arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII") for Defendant's discrimination against female laborers in MVP's practices of making assignments a MVP dispatch office in Illinois to work at various client companies of MVP. MVP is a temporary staffing agency that contracts with its client companies to provide temporary laborers to work at those client companies for a fee. Since at least September 2014, Plaintiff Matthews sought work assignments from MVP at MVP's Elmwood Park office to MVP's client companies but on one or more occasions was not assigned to a client company because of her gender. Since at least September 2014, Plaintiff Person sought work assignments from MVP at MVP's Cicero Park office to MVP's client companies but on one or more occasions was not assigned to a client company because of her gender. Since

1

at least September 2015, Plaintiff Gongora sought work assignments from MVP at MVP's Waukegan office to MVP's client companies but on one or more occasions was not assigned to a client company because of her gender.

2.     Plaintiffs will seek to certify a class pursuant to Fed. R. Civ. P. 23(a) and (b) to pursue their Title VII claims on behalf of themselves and other similarly situated female laborers of MVP who sought work assignments from one or more of MVP's Illinois-based dispatch offices. This Complaint alleges MVP engaged in a pattern or practice of excluding or severely restricting job assignments for female laborers. As all referrals covered in this Complaint were made by MVP in Illinois pursuant to a pattern and practice of discriminatory assignments, the claims encompassed by this action warrant certification as a class action.

## II.    JURISDICTION AND VENUE

3.     This Court has jurisdiction over Plaintiffs' Title VII claim pursuant to 28 U.S.C. § 1331, arising under arising under 42 U.S.C. § 2000e, *et seq*.

4.     Venue is proper in this judicial district as a substantial number of the facts and events giving rise to Plaintiffs' claims occurred in this judicial district and as Defendant maintain its offices and transact business within this jurisdiction.

5.     On October 31, 2014, Plaintiff Qiana Matthews filed a charge of discrimination against MVP. On May 24, 2018, the EEOC issued a Notice of the Right to Sue to Ms. Matthews. Plaintiff Matthews' Notice of Right to Sue and EEOC charge are attached hereto as Exhibit A.

6.     On March 13, 2015, Plaintiff Keeona Person filed a charge of discrimination against MVP. On May 24, 2018, the EEOC issued a Notice of the Right to Sue to Ms. Person. Plaintiff Person's Notice of Right to Sue and EEOC charge are attached hereto as Exhibit B.

7.     On February 20, 2018, Plaintiff Michelle Gongora filed a charge of discrimination against MVP. On February 28, 2018, the EEOC issued a Notice of the Right to

Sue to Ms. Gongora. Plaintiff Gongora's Notice of Right to Sue and EEOC charge are attached hereto as Exhibit C.

8. All Plaintiffs are and have been members of a putative class of female laborers of MVP in the matter of *Cox, et al. v. Personnel Staffing Group, LLC d/b/a MVP*, Case No. 16 C 11282, pending in this district, defined as:

> All female laborers who sought work assignments through MVP's Illinois-based branch offices and were eligible to work at MVP's client companies at any time between July 5, 2014 and the date of judgment and who, on one or more occasion, were not assigned to work in certain positions at MVP's client companies by MVP.

9. The case is timely filed.

### III. PARTIES

**A. Plaintiffs**

10. Plaintiff Qiana Matthews:

   a. is women and resides in this judicial district;

   b. is and, at all relevant times, has been qualified to perform work for MVP;

   c. is and, at all relevant times, has been qualified to perform work for MVP's client companies;

   d. is and, at all relevant times, has been a laborer seeking work assignments from MVP.

11. Plaintiff Keeona Person:

   a. is women and resides in this judicial district;

   b. is and, at all relevant times, has been qualified to perform work for MVP;

   c. is and, at all relevant times, has been qualified to perform work for MVP's client companies;

3

        d.     is and, at all relevant times, has been a laborer seeking work assignments from MVP.

12.    Plaintiff Michelle Gongora:

        a.     is women and resides in this judicial district;

        b.     is and, at all relevant times, has been qualified to perform work for MVP;

        c.     is and, at all relevant times, has been qualified to perform work for MVP's client companies;

        d.     is and, at all relevant times, has been a laborer seeking work assignments from MVP.

**B.**    **Defendant**

13.    At all relevant times, Defendant MVP:

        a.     has been a corporation organized under the laws of the State of Florida;

        b.     has been located in and conducted business in Illinois and within this judicial district;

        c.     has been an "employment agency" as that term is defined by 42 U.S.C. § 2000e(c);

        d.     has been a day and temporary labor service agency as defined by the Illinois Day and Temporary Labor Services Act, 820 ILCS 175/1 *et seq.*; and

        e.     has been an "employer" as that term is defined by 42 U.S.C. § 2000e(b).

### IV.    FACTUAL BACKGROUND

14.    At all relevant times, from 300 days prior to the filing of Plaintiff Matthew's EEOC charge to the present, MVP has operated as an employment agency with branch offices located throughout Illinois.

15. MVP is in the business of providing third-party client companies with low- and moderately-skilled laborers to fill jobs on a daily basis.

16. MVP does not directly supervise the laborers it hires and assigns to work at its client companies.

17. MVP's contracts or agreements provide certain limitations on how its client companies are able to use MVP's laborers, such as restrictions on operating forklifts.

18. MVP acts as an agent of its client companies in recruiting, training, assigning and paying laborers to work at those client companies.

19. MVP's client companies act as joint employers with MVP of laborers assigned to work at each company's facilities in that each client company controls the manner in which the work is performed by MVP laborers and directly supervises laborers assigned by MVP.

20. As part of its business, MVP is constantly engaged in recruiting low- and moderately-skilled laborers to fill ongoing work orders. When a laborer seeks an assignment through MVP, such laborers are seeking to fill a daily job at any of the third-party client companies to which MVP supplies labor.

21. MVP permits individuals who walk into its Illinois-based branch offices to seek work assignments.

22. Laborers are eligible to be referred by MVP to work at its various client companies from the Illinois-based MVP branch offices, regardless of whether they request to be referred to a particular employer.

23. When a female laborers comes to the Illinois-based MVP branch offices seeking a work assignment, an MVP employee typically takes contact information for the individual and either refers the individual for employment or informs the individual that she will be contacted when a daily job becomes open to which she can be referred.

24. The jobs for which the Illinois-based MVP branch offices refer candidates do not typically require any special skills, training or qualifications.

25. From January 4, 2014 through the present, MVP referred for employment thousands of laborers to its client companies.

26. During the period of January 4, 2014 to the present, the Plaintiffs sought work at one of MVP's Illinois-based branch offices on multiple occasions while work assignments were being made to MVP's client companies.

27. Since at least September 2014, Plaintiff Matthews sought work assignments from MVP at MVP's Elmwood Park office in Elmwood, Illinois but on one or more occasions was not assigned to a client company because of her gender.

28. On those occasions when Plaintiff Matthews sought work assignments at the Illinois-based MVP branch offices, she was directed to put her name on a sign-in sheet that indicated the order in which she had arrived.

29. On many of the occasions when the Plaintiff Matthews sought work at one of MVP's Illinois-based branch offices, she was not assigned to work even though there were assignments at MVP's client companies for which she was qualified.

30. On many of the days when the Plaintiff Matthews was not present in the Illinois-based MVP branch offices, she was available for assignments at MVP's client companies but was not contacted for an assignment.

31. Since at least September 2014, Plaintiff Person sought work assignments from MVP at MVP's Cicero office in Cicero, Illinois but on one or more occasions was not assigned to a client company because of her gender.

32. On those occasions when Plaintiff Person sought work assignments at the Illinois-based MVP branch offices, she was directed to put her name on a sign-in sheet that indicated the order in which she had arrived.

33. On many of the occasions when the Plaintiff Person sought work at one of MVP's Illinois-based branch offices, she was not assigned to work even though there were assignments at MVP's client companies for which she was qualified.

34. On many of the days when the Plaintiff Person was not present in the Illinois-based MVP branch offices, she was available for assignments at MVP's client companies but was not contacted for an assignment.

35. Since at least September 2015, Plaintiff Gongora sought work assignments from MVP at MVP's Waukegan office in Waukegan, Illinois, but on one or more occasions was not assigned to a client company because of her gender.

36. On those occasions when Plaintiff Gongora sought work assignments at the Illinois-based MVP branch offices, she was directed to put her name on a sign-in sheet that indicated the order in which she had arrived.

37. On many of the occasions when the Plaintiff sought work at one of MVP's Illinois-based branch offices, she was not assigned to work even though there were assignments at MVP's client companies for which she was qualified.

38. On many of the days when the Plaintiff Gongora was not present in the Illinois-based MVP branch offices, she was available for assignments at MVP's client companies but was not contacted for an assignment.

39. During the period of January 4, 2014, other female laborers have sought work assignments from MVP at MVP's Illinois-based dispatch offices, but on one or more occasions were not assigned to a client company because of their gender.

7

40. On such occasions when other female laborers similarly sought work assignments from one of MVP's Illinois-based branch offices, they were directed to put their names on sign-in sheets that indicated the order in which they had arrived.

41. On those occasions when other female laborers sought work assignments at the Illinois-based MVP branch offices, they were not assigned to work even though there were assignments at MVP's client companies for which they were qualified.

42. On many of the days when other female laborers were not present in the Illinois-based MVP branch offices, they were available for assignments at MVP's client companies but were not contacted for an assignment.

43. For many positions, male laborers received work assignments to MVP's client companies before female laborers.

44. For many positions, male laborers were given assignments to MVP's client companies before female laborers even though the male laborers were no more qualified to perform the job.

45. For many positions, male laborers were given assignments to MVP's client companies before female laborers even when they arrived after the female laborers.

46. On information, male laborers were often assigned by MVP to fill higher paying positions than female laborers.

47. The Illinois-based MVP branch offices have a practice of retaining contact information and/or applications completed by candidates for referral for at least several months.

48. On information, male laborers were contacted to fill work assignments to MVP's client companies before female laborers.

49. Male laborers were contacted for work assignments MVP to MVP's client companies before female laborers even though they were no more qualified to perform the job.

50. Male laborers were contacted for work assignments MVP to MVP's client companies before female laborers even though they had been seeking work at MVP for less time.

51. Plaintiffs have been, at all relevant times, equally qualified to work at MVP's client companies as male laborers who sought work at MVP and were given a work assignment at MVP's client companies.

52. Other female laborers who sought work assignments from MVP's Illinois-based branch offices were likewise equally qualified to work at MVP's client companies as male laborers who sought work at MVP and were given a work assignment at MVP's client companies.

53. MVP failed or refused to assign Plaintiffs to work assignments at MVP's client companies because of their gender.

54. MVP failed or refused to assign other female laborers to work assignments at MVP's client companies because of their gender.

55. MVP dispatchers failed or refused to assign Plaintiffs and other similarly situated female laborers to work at MVP's client companies because they were complying with a discriminatory request from MVP's client companies to only send male laborers to fill certain positions.

56. MVP's client companies often expressed its preference for male laborers to fill certain positions at its facility by using the code words "heavy" to indicate a preference for a male laborer.

## V. CLASS ACTION ALLEGATIONS

57. The Plaintiffs' claims are susceptible to class certification pursuant to Rule 23(a) and (b)(3), Fed. R. Civ. P.

58. The Class is defined to include "All female laborers who sought work assignments through MVP's Illinois-based branch offices and were eligible to work at MVP's client companies at any time between January 4, 2014 and the date of judgment and who, on one or more occasion, were not assigned to work in certain positions at MVP's client companies by MVP."

59. Certification of the class and subclasses pursuant to Rule 23(a) and (b)(3) is warranted because:

    a. This is an appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, and the Defendant is located in this judicial district.

    b. The class is so numerous that joinder of all members is impracticable. Defendant employed in its labor pool thousands of individuals who sought work assignments through its Illinois-based branch offices from January 4, 2014 through the present.

    c. One or more questions of law or fact are common to the class, including:

        (i) Whether MVP has engaged in a pattern or practice of denying work assignments to female laborers because of their gender;

        (ii) Whether MVP intentionally engaged in discriminatory assignments of male versus female laborers;

        (iii) Whether MVP's client companies directed MVP to refrain from assigning female laborers to work in certain positions at MVP's client companies;

        (iv) Whether MVP engaged in a practice of accommodating discriminatory requests by its client companies;

        (v) Whether the conduct complained of herein constitutes a violation of Title VII;

        (vi) Whether injunctive relief is warranted against MVP;

    d.    Plaintiffs will fairly and adequately represent and protect the interests of the Class members. Plaintiffs' Counsel is competent and experienced in litigating discrimination and other employment class actions;

    e.    The class representative and the members of the class have been subject to, and challenge, the same practices that are being challenged by the class;

    f.    Issues common to the class predominate over issues unique to individual class members and pursuit of the claims as a class action is superior to other available methods for the fair and efficient resolution of this controversy.

    g.    Adjudication of these claims as a class action can be achieved in a manageable manner.

60. Pursuit of the claims set forth herein through a class action is an appropriate method for the fair and efficient adjudication of this lawsuit.

## COUNT I
### Violation of Title VII-Race-based Discrimination–Disparate Treatment
**Plaintiffs on behalf of themselves and a class of similarly situated female laborers as against Defendant MVP**
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 60 as though set forth herein.

61. This Count arises under Title VII for Defendant MVP's discriminatory practices in assigning laborers to its client companies, described more fully in paragraphs 14 – 56, *supra*, resulting in disparate treatment of Plaintiffs and a class of female laborers.

62. As described more fully in paragraphs 14 – 56, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against Plaintiffs based on her gender

11

thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

63. As described more fully in paragraphs 14 – 56, *supra*, Defendant MVP engaged in a pattern and practice of intentional discrimination against other similarly situated female laborers based on their gender, thereby violating Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*.

64. As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, Plaintiffs and other similarly situated female MVP laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

65. Defendant MVP's conduct was willful and/or reckless, warranting the imposition of punitive damages.

WHEREFORE, Plaintiffs and the Class respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;

B. enjoin Defendant MVP from continuing or permitting future violations of Title VII for gender discrimination against female laborers in the Class;

C. enter a judgment in Plaintiffs and the Class' favor and against Defendant MVP for back pay damages for Plaintiffs and the Class in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action;

E. for such other relief as this Court deems just and equitable.

**COUNT II**
**Violation of Title VII-Race-based Discrimination – Adverse Impact**
**Plaintiffs on behalf of themselves and a class of similarly situated female laborers as against Defendant MVP**
*Class Action*

Plaintiff hereby incorporates and re-alleges paragraphs 1 through 65 as though set forth herein.

12

66. This Count arises under Title VII for Defendant MVP's policies and practices of assigning almost exclusively male laborers to fill certain positions, as described more fully in paragraphs 14 – 56, *supra*, resulting in a significant adverse impact on Plaintiffs and a class of female MVP laborers.

67. Defendant MVP practice of assigning almost exclusively male laborers to fill certain positions at its client companies' facilities assign has caused a significant disparate impact on Plaintiffs and other similarly situated female MVP laborers in obtaining work assignments at Defendant MVP.

68. As a direct and proximate result of the above-alleged acts or omissions of Defendant MVP, Plaintiffs and other similarly situated female laborers suffered damages of a pecuniary and non-pecuniary nature, humiliation, and degradation.

WHEREFORE, Plaintiffs and the Class respectfully pray that this Court:

A. allow this action to proceed as a class action against Defendant MVP pursuant to Rule 23;

B. enjoin Defendant MVP from continuing or permitting future violations of Title VII for gender discrimination against female laborers in the Class;

C. enter a judgment in their favor and against Defendant MVP for back pay damages for Plaintiff and the Class in amounts to be determined at trial;

D. for all reasonable attorney's fees and costs in bringing this action; and

E. for such other relief as this Court deems just and equitable.

Dated: May 29, 2018

Respectfully submitted,

*/s/Christopher J. Williams*
Christopher J. Williams (ARDC #6284262)
Alvar Ayala (ARDC #6295810)
Workers' Law Office, P.C.
53 W. Jackson Blvd, Suite 701
Chicago, Illinois 60604
(312) 795-9121

Attorneys for Plaintiffs